filed 1-13-03 in accordance with Order No. 2 by

RECEIVED
DEC 13 2002

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETITION FOR A WRIT OF HABEAS CORPUS 28 USC § 2254

EVIDENTIARY HEARING REQUESTED

Case No. 02 . 12441 MEL

PETITIONER,
Stephen Pina, Prisoner Number 60009

Place of Confinement:
Souza-Baranowski Correctional Center
P.O Box 8000
Shirley, MA 01464

v.

RESPONDENTS,
Michael T. Maloney, Commissioner
Massachusetts Department of Correction
50 Maple Street
Milford, MA 01757-3698

Edward Ficco, Superintendent
Souza-Baranowski Correctional Center
P.O Box 8000
Shirley, MA 01464

The Attorney General of the State of Massachusetts, Thomas Reilly.

**PETITION**

1. Name and location of court which entered the judgment of conviction under attack: Suffolk Superior Court, 90 Devonshire Street, Boston, 02109.

2. Date of judgment of conviction: January 30, 1996, at second trial, after six days of jury deliberation. (The first trial ended with a mistrial, after a "hung jury" on March 9, 1995.)

3. Length of sentence: Life sentence without possibility of parole; four and one half years concurrent with life sentence.

(4)

4. Nature of offense involved: First-degree murder; possession of a firearm; possession of ammunition.

5. Pleas? Not guilty to all charges.

6. Kind of trial: Jury.

7. Did you testify at the trial? No.

8. Did you appeal from the judgment of conviction? Yes.

9. (a) Name of court: Supreme Judicial Court of Massachusetts (SJC).
(b) Result: Judgments affirmed.
(c) Date of result: October 29, 1999; 430 Mass. 266, 717 N.E.2d 1005 (1999); petition for rehearing denied December 6, 1999, Rescript issued February 1, 2000.
(d) Grounds raised:

1. The prosecutor's overreaching and improper closing argument constitutes reversible error where he vouched for the credibility of witnesses and played on the sympathy and fears of jurors.

2. The trial judge committed reversible error by telling the jury that it could draw inferences from the evidence as to why a person did or did not testify in the case.

3. The trial judge committed reversible error by instructing the jury on consciousness of guilt over objection of defense counsel.

4. Under article 12 of part I of the Massachusetts Constitution this Court should reconsider its position on instructions pertaining to the theory of "consciousness of innocence."

5. During his instructions to the jury the trial judge committed reversible error by giving examples of deliberate premeditation which closely resembled the facts adduced at trial.

6. The trial judge committed reversible error by improperly limiting the defendant's cross-examination of two witnesses.

7. This Court should exercise its power of review under Massachusetts General Laws c. 278 §33E and reverse the defendant's conviction.

(e) No further review in higher state court; SJC is the highest court in the state.

(f) No Petition for Writ of Certiorari was filed by petitioner.

10. Motions filed in state court: Yes.

11.

a) (1) Name of Court: Suffolk Superior Court.

2) Nature of Proceeding: Motion for New Trial (including addendum), Mass. R. Crim. 30(b), with request for evidentiary hearing (originally pro se, with addendum represented by counsel).

3) Grounds raised:

1. "Trial counsel rendered ineffective assistance by failing to pursue substantial ground for defense of mistaken identification, by negating to present evidence material to the issue of the defendant's innocence."
2. "Failure of prosecutor to disclose material evidence exonerating the defendant was error of constitutional dimension requiring a new trial."
3. "Appellate counsel was ineffective by failing to pursue evidence presented after trial, by a motion for a new trial, insomuch, the evidence thereof, was not readily established on the record which exonerated the defendant of shooting the victim/witness and killing the victim Robinson."
4. "The trial had several errors, which its cumulative effect denied the defendant a fair trial as guaranteed by the Massachusetts Declaration of Rights Article XII and the Sixth and Fourteenth Amendments of the United States Constitution."
5. Deprivation of effective assistance of trial counsel by his failure to bring forth viable alibi evidence, and deprivation of different appellate counsel for his failure to raise that issue in petitioner's direct appeal.

(4) Petitioner did not receive an evidentiary hearing on the motions.

(5) Result: Motions denied.

(6) Date of Result: November 27, 2000.

11(b) Petition for leave to file appeal from denial of the motion for new trial pursuant to G.L. c. 278 § 33E was filed by petitioner in the Supreme Judicial Court for Suffolk County, and denied on July 11, 2002.

11(c) No further appeal.

12. Concise statement of every ground on which petitioner claims he is being held unlawfully.

Please note that the attached STATEMENT OF FACTS supports the following grounds, and is incorporated herein by reference.

A. Ground one: The prosecutor's overreaching and improper closing argument constitutes reversible error where he vouched for the credibility of witnesses and played on the sympathy and fears of jurors, which so infected the trial with unfairness as to make the resulting conviction a denial of due process.

B. Ground two: The trial judge committed reversible error by telling the jury that it could draw inferences from the evidence as to why a person did or did not testify in the case, thus infringing upon petitioner's constitutional privilege against self-incrimination and his right without inference against him to decline to testify or to prove his innocence, and shifting to him the Commonwealth's burden to prove guilt beyond a reasonable doubt.

C. Ground three: During his instructions to the jury the trial judge committed reversible error by giving examples of deliberate premeditation which closely resembled the facts adduced at trial, thereby violating petitioner's Sixth and Fourteenth Amendment rights.

D. Ground four: The trial judge committed reversible error by improperly limiting the defendant's cross-examination of two witnesses, thus denying his rights under the Confrontation Clause.

E. Ground five: Deprivation of effective assistance of trial counsel by his failure to bring forth viable alibi evidence, and deprivation of different appellate counsel for his failure to raise that issue in petitioner's direct appeal.

13. All of grounds listed in 12 A-E inclusive were previously presented to the state courts.

14. The petitioner does not have a pending petition for Writ of Certiorari to the Supreme Court of the United States.

15. Names and addresses of attorneys who represented petitioner in stages of judgment attacked herein, i. e., the second trial and thereafter:

The same attorney at (a) preliminary hearing, (b) arraignment and plea, (c) trial, and (d) sentencing: Bruce W. Carroll, Esq., 50 Beacon Street, 2nd floor, Boston, MA 02108.

(e) On appeal: Stephen Neyman, Esq., 160 State Street, 8th floor, Boston, MA 02109.

(f) In any post-conviction proceeding: Robert A. George, Esq., 138 Newbury Street, Boston, MA 02116.

(g) On appeal from adverse ruling in post- conviction proceeding: William M. White, Esq., One Faneuil Marketplace, 3rd floor, Boston, MA 02109.

16. The petitioner was sentenced on more than one indictment in the same court and the same time as follows: first–degree murder, life-MCI Cedar Junction for No. SUCR1993-11574 (001); and in No. SUCR1993-11574 (002), four and one half to five years committed, MCI Cedar Junction, concurrent with sentence in No. SUCR1993-11574 (001).

17. The petitioner does not have any future sentence to serve after he completes the sentences imposed by the judgment under attack.

WHEREFORE, petitioner Stephen Pina prays:

A. The Court issue a writ of habeas corpus, on one or more grounds or on the cumulative effect of two or more grounds, to have petitioner brought before the Court to the end that he may be discharged from his unconstitutional conviction, confinement and restraint;

B. The Court require respondent to bring forward the entire record of the state court proceedings, including the transcript of the trial, the record on appeal, other relevant records in the case, and to specify any proceeding in the case that has been reported but not transcribed;

C. The Court require respondent to file an answer admitting or denying every factual allegation herein;

D. The Court permit petitioner to respond to any affirmative defense raised by respondent in his answer;

E. The court allow petitioner, who is indigent, to proceed without prepayment of costs and fees;

F. The Court allow petitioner to conduct discovery and to expand the record relating to issues raised by this petition;

G. The Court allow indigent petitioner funds to obtain expert, investigative, and other services necessary for adequate representation in this matter;

H. The Court conduct a hearing at which proof may be offered concerning the allegations in this petition that respondent does not admit;

I. The Court allow petitioner sufficient time to brief the issues of law raised by this petition;

J. The Court, if it concludes that state remedies with regard to any claim in the petition have not been properly exhausted, should hold the petition in abeyance pending exhaustion of state remedies; and

K. The Court grant petitioner such other and further appropriate relief to which he may be entitled in this proceeding.

Emanuel Howard
Signature of Attorney: Emanuel Howard

I declare under the penalty of perjury that the foregoing is true and correct. Executed on

December 6, 2002 ______ Petitioner

## STATEMENT OF FACTS.

## STATEMENT OF GENERAL FACTS.

Keith Robinson (the victim) sold drugs. Timothy Hall (Hall), while standing close to the victim and negotiating the purchase of five bags of heroin from him in the Mission Hill section of Boston in the evening of February 26, 1993, observed a man wearing a red jacket, later identified as the petitioner, walk up to the victim, say something to the victim, grab the victim, and fire at least four shots into the victim. Hall told the police that he did not want to get involved; he asked them to get him out of the area. He first told the police that he was only 60% sure that petitioner was the shooter. He described the shooter as being five feet-nine inches tall and weighing 160 lbs. to 180 lbs., whereas the police booking sheet shows petitioner as weighing 260 lbs.

Another witness, Debra Rocher Annas (Annas), had approached the victim to buy heroin that same evening, at a time when about fifteen to twenty-five people were standing nearby. She observed the petitioner, dressed all in black, exit the passenger side of a maroon two door car, which had driven up, and walk over to the victim. She heard him mention money, a ring, and business. Annas saw the petitioner walk back to the car, reach into it, and then again approach the victim, this time with a gun. (She, in contrast to Hall, did not see anyone, like Hall, standing near the victim, while Hall, in contrast to her, did not see petitioner exit a car, return to a car, or return from a car.) Annas claims

that she saw petitioner shoot the victim in the eye and then run in the direction of McGreevy Way. Several months later, she arranged with the police to take her out of a crack house to meet with a police detective. She then identified the petitioner as the shooter, explaining that she knew him and did not want to identify him at the time of the shooting, because she did not want to get involved in a murder case.

A third witness, Linda Taylor (Taylor), testified that she and Demetrius Brown sold drugs for the petitioner in the area of the shooting, that petitioner also sold drugs in that area, that petitioner owned a burgundy <u>four door</u> hatchback, that she heard the petitioner say to another person earlier on the day of the shooting that he was going to set an example and that he was not going to be taken advantage of again, and that the same evening she saw petitioner in the passenger seat of the burgundy car. In October 1993, during a conversation with a police detective, she never mentioned that she saw petitioner in that car on the day of the shooting.

The victim died of gunshot wounds during the night of February 26.

Two days after the shooting, and after having heard that the police were interested in whether he was involved in the killing, the petitioner voluntarily made himself available to them for questioning. The Commonwealth did not charge him with the crime until early October, 1993.

As can be seen, the identifications were not unequivocal. Identification was the central issue and misidentification was the petitioner's defense. There was also evidence suggesting that the shooting victim had robbed another man earlier, and that the robbery victim was responsible for shooting and killing the victim.

## STATEMENT OF FACTS RELATING TO GROUNDS

A. Ground one: The prosecutor's overreaching and improper closing argument constitutes reversible error where he vouched for the credibility of witnesses and played on the sympathy and fears of jurors, which so infected the trial with unfairness as to make the resulting conviction a denial of due process.

In his closing argument, the prosecutor praised the courage of the witnesses for coming forward and testifying against the petitioner in the face of possible retaliation, e. g., "...when you heard the witnesses testify here, you didn't have the benefit of hearing the background that they had to testify." This tells the jury that it is unaware of something about which the prosecutor has personal knowledge. The prosecutor adds that this background is "...so important to this case," and then goes on to depict the crime scene as an anarchous war zone, stating that if one witnesses a crime and talks to the police, one's life is in danger. In essence, the prosecutor argued that any witness risking so much under these circumstances must be telling the truth, thus improperly vouching for their credibility. In another place, the prosecutor vouched for the

credibility of Hall and another witness by referring to their age and maturity, so that when he mentioned that the fifteen to twenty-five people standing nearby the shooting did not want to come forward and get involved, he implied that he had personal knowledge that the ones who did not come forward were younger and less responsible. Nowhere in the record are the ages or maturity levels of these other persons mentioned. This theme was carried throughout the prosecutor's argument about particular witnesses and went to the heart of the case, causing trial counsel to object and also move for a mistrial.

The prosecutor also improperly played on the fears of the jury by suggesting that violence and retribution faced those who would offer cooperation after witnessing a crime, e. g.,"…if you witnessed a crime, if you came forward, your life's in danger." Without any support in the record, and without any record identification of the fifteen to twenty-five people, the prosecutor suggested to the jury that they did not come forward because they knew petitioner and were afraid of him. The trial judge agreed to cure the error, but never did. The trial judge, in effect, enhanced the unfairness of the prosecutor's improper remarks when he gave the instructions discussed in B., ground two.

B. Ground two: The trial judge committed reversible error by telling the jury that it could draw inferences from the evidence as to why a person did or did not testify in the case, thus infringing upon petitioner's constitutional privilege against self-incrimination and his right without

inference against him to decline to testify or to prove his innocence, and shifting to him the Commonwealth's burden to prove guilt beyond a reasonable doubt.

During his instructions to the jury, the judge told them that they could consider the character of the neighborhood and draw inferences as to the extent to which this may have impacted the decision of unidentified eyewitnesses (i. e., the fifteen to twenty-five people standing nearby the shooting] not to report their observations to the police or testify at trial. This instruction unfairly and prejudicially endorsed the prosecutor's closing argument discussed in A., ground one.

This also served as a "missing witness" instruction, improperly suggesting that: the petitioner knew the identities of these unidentified people; that he would have offered them as witnesses if he thought that they would give favorable evidence, and; that in their absence as witnesses, the jury might reasonably infer that those "missing witnesses" would have given evidence unfavorable to the petitioner had they been called.

C. Ground three: During his instructions to the jury the trial judge committed reversible error by giving examples of deliberate premeditation relating to the petitioner which closely resembled the facts adduced at trial, thereby violating his Sixth and Fourteenth Amendment rights.

The trial judge, in his instruction on deliberate premeditation and in his response to a question from the deliberating jury, told the jury that

they "may also consider the defendant's conduct prior to the alleged killing as relevant to the issue of deliberate premeditation." He then gave the jury an example of prior conduct which very closely resembled the evidence given by the Commonwealth's "eyewitnesses." There is a reasonable likelihood, especially given the six-day jury deliberation, that the jury would take it that the judge believed that it was the defendant, and no other, who engaged in the prior conduct, and that the prior conduct did in fact occur. This instruction on an essential element of first degree murder, invaded the province of the jury, informed the jury of the judge's personal conclusions as to the identity of the perpetrator as well as to the events leading up to the shooting. It had the effect of influencing the jury as to the issues of identity and deliberate premeditation, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

D. Ground four: The trial judge committed reversible error by improperly limiting the defendant's cross-examination of two witnesses, thus denying his rights under the Confrontation Clause.

The trial judge's decisions to limit petitioner's cross-examination of "eyewitness" Hall, and of "motive" witness Taylor, violated his Sixth Amendment Confrontation Clause rights.

The trial judge prohibited defense counsel (1) from establishing in cross-examination of "eyewitness" Hall, that Hall expected to have favorable action from the Commonwealth on a pending motion to revise

and revoke a conviction and sentence Hall had previously received in the same county, and (2) from cross-examining Hall about a pending probation matter in the same county. The purpose of the cross-examination was to show facts indicating bias, prejudice or motive to lie, on the part of this witness, in the hope of his receiving favorable treatment from the Commonwealth in exchange.

Taylor had given trial evidence of alleged statements made by petitioner earlier on the day of the shooting. Although the statements did not contain the name of, or refer to, the victim, they were used by the Commonwealth to suggest a motive for shooting the victim that petitioner had on the day of the crime, and that he went after the victim shortly thereafter. This motive, although not an essential element of the crimes charged, bore on the issue of identification. Defense counsel attempted to show that Taylor had made a prior inconsistent statement concerning the day on which she heard petitioner make these statements. The trial judge prohibited defense counsel from so doing. Taylor's prior testimony destroys the nexus between the statements of motive and the actions of shooting. Her prior testimony points out that petitioner made the statements either a month before or a month after the crime, thereby eliminating the suggestion of immediate action following a statement of motive.

E. Ground five: Trial counsel was ineffective in a constitutional sense for failing to bring forth viable alibi evidence (*Strickland v. Washington,*

466 U.S. 668 (1984)), and appellate counsel was ineffective in a constitutional sense for failing to raise that issue in petitioner's direct appeal (*Evitts v. Lucy*, 469 U.S. 387 (1985).)

By the time trial began, trial counsel knew the existence of a young woman named Tomorrow Vailes, and also knew that Ms. Vailes could have, and was prepared to give, evidence at trial as follows. (1) On February 25, 1993 (the day before the shooting), petitioner arrived at her Dorchester, Massachusetts apartment between 9:00 p.m. and 9:30 p.m. (2) As petitioner was suffering from the flu at that time, she tended to him and he stayed overnight in her apartment. (3) The next day, February 26, Ms. Vailes left the apartment at 7:30 a.m., while petitioner was still asleep in bed, and returned at 1:30 p.m. to find petitioner still in bed. (4) Ms. Vailes and petitioner remained in each other's company in the apartment for the rest of the day, both falling asleep around 11:00 p.m.

Ms. Vailes met with trial counsel before trial, communicated the above information to him, and was given to understand that he would be calling her at trial as an alibi witness. Although trial counsel placed her name on the witness list, and although she was present at court among the sequestered witnesses all during the trial, Ms. Vailes was never called.

There being nothing apparent on the record justifying the failure to call Ms. Vailes, and there being very good reason to call her to give alibi

evidence which would be consistent with the defense of misidentification, petitioner made appellate counsel aware of this prejudicial omission. The alibi evidence would also bolster the misidentification defense, and yet appellate counsel failed to raise the issue in petitioner's direct appeal to the SJC.